## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| THOMAS J. BERRIER<br>804 William Penn Highway<br>Mifflintown, PA 17059 | :<br>:<br>:  CIVIL ACTION<br>: |
| Plaintiff, | :  No.:<br>: |
| v. | :  **JURY TRIAL DEMANDED**<br>: |
| VALLEY PROTEINS, INC.<br>151 Valpro Drive<br>Winchester, VA 22603 | :<br>:<br>: |
| Defendant. | :<br>: |

## CIVIL ACTION COMPLAINT

Thomas J. Berrier (hereinafter referred to as "Plaintiff," unless indicated otherwise) by and through his undersigned counsel, hereby avers as follows:

## INTRODUCTION

1. Plaintiff has initiated this action to redress violations by Valley Proteins, Inc. (hereinafter "Defendant," unless indicated otherwise) of the Americans with Disabilities Act, as amended ("ADA" - 42 U.S.C. §§ 12101 *et. seq.*), the Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. §§ 10231.101, *et seq.*, and Pennsylvania common law. As a direct consequence of Defendant's unlawful actions, Plaintiff seeks damages as set forth herein.

## JURISDICTION AND VENUE

2. Plaintiff resides in and is a citizen of Pennsylvania.

3. Valley Proteins, Inc. is incorporated under the laws of Virginia with headquarters and/or principal place(s) of business in Virginia rendering it a citizen of Virginia.

4. This Court, in accordance with 28 U.S.C. § 1332, has jurisdiction over Plaintiff's claims because there is complete diversity jurisdiction, as Plaintiff is a citizen of Pennsylvania and Defendant is a citizen of Virginia, and the amount in controversy exceeds $75,000.

5. This action is also being initiated pursuant to federal law(s) (the ADA) and therefore, the United States District Court for the Middle District of Pennsylvania also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because the claims arise under the laws of the United States. This Court has supplemental jurisdiction over Plaintiff's state law claims because they arise out of the same circumstances and are based upon a common nucleus of operative fact.

6. This Court may properly maintain personal jurisdiction over Defendant because its contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with traditional notions of fair play and substantial justice, satisfying the standard set forth by the United States Supreme Court in *Int'l Shoe Co. v. Washington,* 326 U.S. 310 (1945), and its progeny.

7. Pursuant to 28 U.S.C. § 1391(b)(1) and (b)(2), venue is properly laid in this district because Defendant conducts business in this judicial district and because a substantial part of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

8. Plaintiff is proceeding herein (in part) under the ADA after properly exhausting all administrative remedies with respect to such claims by timely filing a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") and by filing the instant lawsuit within ninety (90) days of receiving a notice of dismissal and/or right to sue letter from the EEOC.

## PARTIES

9. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

10. Plaintiff is an adult individual, with an address as set forth in the caption.

11. Defendant Valley Proteins, Inc, is a corporation providing services for the collection, rendering, and recycling of animal processing and supermarket waste streams and restaurant used cooking oil throughout the contiguous United States, with headquarters at the above-captioned address. Plaintiff, however, was hired through and worked out of Defendant's Mifflintown, Pennsylvania location.

12. At all times relevant herein, Defendant acted through their agents, servants and employees, each of whom acted at all times relevant herein in the course and scope of their employment with and for Defendant.

## FACTUAL BACKGROUND

13. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

14. Plaintiff was employed by Defendant for approximately 3 years, from in or about January of 2018, until his unlawful termination (discussed further *infra*) on or about November 15, 2020.

15. While Defendant was headquartered in Virginia, Plaintiff was hired through and worked out of Defendant's facility located at 687 Cleck Road, Mifflintown, Pennsylvania.

16. At the time of his termination, Plaintiff was employed as a second shift supervisor.

17. Plaintiff was primarily supervised by General Manager, Jay Shestokes (hereinafter "Shestokes") and Plant Manager, Randy Allison (hereinafter "Allison").

18. Throughout his employment with Defendant, Plaintiff was a hard-working employee who performed his job well.

19. Nonetheless, Plaintiff was terminated on or about November 15, 2020, due to his disabilities and/or his possession of a medical marijuana prescription/certification. Plaintiff was (1) point-blank discriminated against for his actual or perceived disabilities; (2) not accommodated; (3) and/or discriminated against for having a lawful medical marijuana certification issued by the Commonwealth of Pennsylvania.

20. Plaintiff has, and continues to suffer from, post-traumatic stress disorder ("PTSD") (with related symptoms), anxiety, and other health problems. Plaintiff's conditions, at times, prevent him from engaging in some daily life activities, including but not limited to engaging in social interaction and sleeping (among other daily life activities).

21. PTSD and anxiety are also considered "serious health condition[s]" under Pennsylvania's MMA. *See* 35 P.S. § 10231.103.

22. Plaintiff has attempted many types of medication and treatment for his aforesaid serious health conditions, and Defendant's management was aware that Plaintiff had serious health problems for which he took medication that periodically needed to be adjusted.

23. Despite Plaintiff's aforesaid health conditions and limitations, he was able to fully perform the essential functions of his job well for the entirety of his tenure with Defendant.

24. Nonetheless, in or about November of 2020, Defendant's management approached Plaintiff out of the blue and asked him if he ever used marijuana (upon information and belief because another employee relayed Plaintiff's medical marijuana patient status to Defendant). Plaintiff replied that he had a valid medical marijuana card and that he only used prescribed marijuana after work hours.

25. Defendant's management then asked Plaintiff to see his medical marijuana card and informed him that they would talk to him the following day.

26. Pursuant to 35 P.S. § 10231.403(a), Plaintiff's physician had submitted the required forms to the Department of Health to complete his certification as a qualifying "patient" authorizing him to use medical marijuana for palliative care.

27. Plaintiff was thus certified as a qualifying "patient" under the MMA and was issued a medical marijuana identification card, effective September 22, 2020. *See* 35 P.S. § 10231.501.

28. However, shortly after providing Defendant his medical marijuana card, Plaintiff was abruptly terminated and informed that Defendant had a blanket policy against medical marijuana usage, even if medically prescribed.

29. Plaintiff contested this directly with Defendant during which Plaintiff reiterated he was a qualified "patient" under the MMA and held a valid Pennsylvania medical marijuana identification card. Defendant, however, refused to engage in any interactive process and Plaintiff was still terminated.

30. Plaintiff had a primarily supervisory role, which only included using a forklift only on rare occasions when Defendant was short-handed. Plaintiff would have foregone the use of medical marijuana if anyone had any kind of interactive dialogue with him (although it has been one of the few medications that has actually helped him).

31. Moreover, nothing would have prohibited Plaintiff from performing his job effectively or properly just because he consumed marijuana in the evening,[1] and Defendant never even administered a drug test to Plaintiff but simply terminated him outright.

---

[1] *See* 35 P.S. § 10231.2103(b)(2) which prohibits any retaliation by the employer unless the employee is "under the influence of medical marijuana **in the workplace or for working while under the influence of medical marijuana**." (Emphasis added).

5

32. Accepting Defendant's blanketly discriminatory views or policies, they could (also unlawfully) prohibit individuals with disabilities from working who take far more powerful or potent narcotics to treat for their respective health problems.

33. Plaintiff believes and therefore avers that he was terminated from employment because of his (1) disabilities; (2) requests for accommodations; (3) and/or due to his status as a qualified "patient" under the MMA, in violation of common law and 35 P.S. § 10231.2103(b)(1).[2]

## COUNT I
## Violations of the Americans with Disabilities Act, as amended ("ADA")
([1] Actual/Perceived/Record of Disability Discrimination;
[2] Retaliation; and [3] Failure to Accommodate)

34. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

35. Plaintiff was terminated from his employment with Defendant because of: [1] his actual and/or perceived disabilities; [2] his record of impairment; [3] his requested accommodations, which constitutes unlawful retaliation; and/or [4] Defendant's refusal to accommodate Plaintiff.

36. Plaintiff was denied reasonable accommodations by Defendant which he required as a result of his disabilities

37. After being notified about Plaintiff's disabilities, Defendant also failed to engage in any interactive process with Plaintiff to determine whether or not there were any accommodations Plaintiff could be provided with.

38. These actions as aforesaid constitute violations of the ADA.

---

[2] Pursuant to 35 P.S. § 10231.2103(b)(1), "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee . . . solely on the basis of such employee's status as an individual who is certified to use medical marijuana."

## COUNT II
## Violations of the Pennsylvania Medical Marijuana Act ("MMA")
## 35 P.S. §§ 10231.101, *et seq.*

39.     The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

40.     Plaintiff has and continues to suffer from "serious medical condition[s]" within the meaning of 35 P.S. § 10231.103.

41.     Plaintiff is a qualifying "patient" within the meaning of 35 P.S. § 10231.103.

42.     Defendant is an "employer" within the meaning of 35 P.S. § 10231.2103(b).

43.     Plaintiff was terminated on or about November 15, 2020, after informing Defendant that he was a qualified "patient" under the MMA and held a valid Pennsylvania medical marijuana identification card.

44.     Pursuant to 35 P.S. § 10231.2103(b)(1), "No employer may discharge, threaten, refuse to hire or otherwise discriminate or retaliate against an employee . . . solely on the basis of such employee's status as an individual who is certified to use medical marijuana."[3]

45.     Recently, the Eastern District of Pennsylvania issued a decision in which it predicted that, "the Pennsylvania Supreme Court would find that the General Assembly 'intended to create, . . . by implication, a private cause of action' for Section 2103(b)(1) [of the MMA]."

---

[3] Several courts have found an **implied** private right of action for violations of a state medical marijuana act that does not explicitly provide for a private right of action where the plaintiff is a qualifying patient under the act, there is no indication of legislative intent to deny a private cause of action, and the private cause of action is not inconsistent with the underlying legislative purposes of the act. *See Palmiter v. Commonwealth Health Sys., Inc.*, No. 19 CV 1315, 2019 WL 7372712, at *10-15 (Pa. Ct. Com. Pl. Nov. 22, 2019); *Noffsinger v. SSC Niantic Operating Co.*, 273 F. Supp. 3d. 326, 340-41 (D. Conn. 2017) (holding legislature intended a private cause of action under Connecticut's Palliative Use of Marijuana Act); *Whitmire v. Wal-Mart Stores Inc*., 359 F. Supp. 3d 761, 781-82 (D. Ariz. 2019) (following *Noffsinger* to hold there is an implied private cause of action for violations of the Arizona Medical Marijuana Act); *Chance v. Kraft Heiz Foods Co.*, 2018 Del. Super. LEXIS 1773, *9-18 (Del. Super. Ct. 2018) (same regarding Delaware's Medical Marijuana Act); *Callaghan v. Fabrics Corp.*, 2017 WL 2321181, at *4-8 (R.I. Super. Ct. 2017) (same regarding Rhode Island's medical marijuana statute).

*Hudnell v. Thomas Jefferson Univ. Hosps., Inc.*, No. 20-01621, 2020 U.S. Dist. LEXIS 176198, at *15 (E.D. Pa. Sep. 25, 2020).

46. By terminating Plaintiff because he is a qualified "patient" under the MMA, Defendant has violated the law pursuant to 35 P.S. § 10231.2103(b)(1).

## COUNT III
### Common-Law Failure to Hire/Wrongful Termination
**(Public Policy Violation)**

47. The foregoing paragraphs are incorporated herein in their entirety as if set forth in full.

48. The passage of the Pennsylvania Medical Marijuana Act ("MMA"), 35 P.S. §§10231.101, *et seq.,* made clear that the public policy of the State of Pennsylvania is to provide employment and hiring protections for citizens of the state who qualify for the medical use of marijuana and register as qualifying patients with the Department of Health.

49. In providing protections from discriminatory hiring/firing decisions based on the medical use of marijuana, the legislature made clear that the public policy of the state was to ensure that qualified patients were not denied employment opportunities based on their lawful use of medical marijuana for palliative purposes.[4]

---

[4] Pennsylvania courts have recognized the existence of a public policy violation in those instances in which the employee is terminated after he engages in conduct which he is privileged by law to do. *See, e.g.*, *Hodson v. Alpine Manor, Inc.*, 512 F. Supp. 2d 373, 395 (W.D. Pa. 2007) ("[A] recognized facet of public policy may be violated by terminating an employee in retribution for exercising a right protected by a Pennsylvania statute, which, by its plain language, fosters a state public policy.") (citation omitted); *Reitz v. Persing*, 831 F. Supp. 410, 415 (M.D. Pa. 1993) (public policy implicated where termination compromised the employee's First Amendment rights and Pennsylvania constitutional rights to free communication of thoughts); *Rettinger v. American Can Co.*, 574 F. Supp. 306, 311 (M.D. Pa. 1983) (employment terminated in retaliation for filing workers' compensation claim); *Shick v. Shirey*, 552 Pa. 590, 716 A.2d 1231 (Pa. 1998) (for filing a claim for unemployment benefits).

50. Defendant terminated Plaintiff because of his lawful use of medical marijuana and status as a qualified "patient" under the MMA, with a valid Pennsylvania medical marijuana identification card.

51. Defendant's termination of Plaintiff, for engaging in actions he was lawfully permitted to do, violated public policy. *See Palmiter v. Commonwealth Health Sys., Inc.*, No. 19 CV 1315, 2019 WL 7372712, (Lackawanna C.P. Nov. 22, 2019) ("[The plaintiff] has alleged that [the defendants] terminated her employment on January 29, 2019, on the singular ground that she was a certified medical marijuana user. Such a discharge 'implicates a clear mandate of public policy' as declared by the General Assembly in the unambiguous language of 35 P.S. § 10231.2103(b)(1).").

52. These actions as aforesaid constitute violations of the public policy of Pennsylvania.

**WHEREFORE**, Plaintiff prays that this Court enter an Order providing that:

A. Defendant is to promulgate and adhere to a policy prohibiting discrimination and retaliation in the future against any employee(s);

B. Defendant is to compensate Plaintiff, reimburse Plaintiff, and make Plaintiff whole for any and all pay and benefits Plaintiff would have received had it not been for Defendant's illegal actions, including but not limited to back pay, front pay, salary, pay increases, bonuses, insurance, benefits, training, promotions, reinstatement and seniority;

C. Plaintiff is to be awarded punitive damages as permitted by applicable law, in an amount believed by the Court or trier of fact to be appropriate to punish Defendant for its willful, deliberate, malicious and outrageous conduct and to deter Defendant or other employers from engaging in such misconduct in the future;

D. Plaintiff is to be accorded other equitable and legal relief as the Court deems just, proper and appropriate (including but not limited to damages for emotional distress, pain, suffering and humiliation);

E. Plaintiff is to be awarded the costs and expenses of this action and reasonable attorneys' fees as provided by applicable federal and state law; and

F. Any verdict in favor of Plaintiff is to be molded by the Court to maximize the financial recovery available to Plaintiff in light of the caps on certain damages set forth in applicable federal law; and

G. Plaintiff's claims are to receive a trial by jury to the extent allowed by applicable law. Plaintiff has also endorsed this demand on the caption of this Complaint in accordance with Federal Rule of Civil Procedure 38(b).

        Respectfully submitted,

        **KARPF, KARPF & CERUTTI, P.C.**

        Ari R. Karpf, Esquire
        3331 Street Road
        Two Greenwood Square, Suite 128
        Bensalem, PA 19020
        (215) 639-0801
        *Attorneys for Plaintiff*

Date: January 25, 2022